23-6073. Counsel for appellant, if you'd make your appearance and then proceed. Thank you, your honor. May it please the court. Kyle Wackenheim, assistant federal public defense attorney. On behalf of the appellant, Julian Manzano. Oklahoma's second degree murder statute does not categorically qualify as a crime of violence under the guidelines for two independent reasons. First, section 701.8 of Title 21 contains a felony murder provision that in practice does not require the underlying dangerous felony. Second, Oklahoma's murder scheme includes unborn children as victims of the offense. Again, taking it outside the scope of generic murder. As to the second, did you raise that before the district court? Your honor, I'm not prepared to concede that it's review for plain error, though I think the Malloy case makes it a difficult argument for me to make. Well, did you make an argument for plain error above here? In the reply brief. In the reply brief. Yes, your honor. So you're not conceding that it has not been preserved, but you did, I just didn't immediately recall. Sure. You did not, but you did argue plain error in the reply brief. Yes, your honor. And part of the reason why in the reply brief we first contested whether or not it was not properly raised was the basis of the argument with respect to unborn children derives from the Adams decision. And the Adams decision was very much top center of the district court's analysis of whether or not Oklahoma's second degree murder statute qualified. Yeah, but you did cite Adams for an entirely different thing, right? I mean, if I go back and look at the transcript, there's no reference to Adams having anything to do with unborn children. I cannot dispute that, your honor. You're correct. Okay. But turning to the, I don't know if the court prefers to go to that argument first or to the first. I think either argument is sufficient for reversal. The first question is, what is the actual federal comparator? What is generic murder? I think this court has been fairly clear, albeit in a different context in the Castro-Gomez case, importing the Third Circuit's definition from Morero. I think the government also agrees that that is an appropriate definition, and I think it meets the requirements of determining a generic definition. It relies on federal and state statutes, the model of penal code, dictionaries, and treatises. And relevant to the discussion today is generic murder under that definition is defined as causing the death of another person either intentionally during the commission of a dangerous felony or through conduct evincing recklessness, depraved indifference to serious dangers posed to human life. What's relevant for Appellant's argument here is the necessity of an underlying dangerous felony. And that's clear from the sources used to arrive at the generic definition. And admittedly, Morero didn't hinge its analysis on what the felony murder provision was. But the model of penal code, section 210.2, its concept of felony murder limits it to robbery, rape, or deviant sexual intercourse by force or threat of force, arson, burglary, kidnapping, or felonious escape. Black's law dictionary is similar. It defines murder, felony murder, as murder occurring during the commission of a dangerous felony, and it enumerates rape, kidnapping, robbery, burglary, and arson. Importantly, the government's not argued that the generic definition is broader than dangerous felony. Now, what I think Appellant needs to contend with and what I think we can win is whether or not Oklahoma second-degree murder permits the underlying felony to be a non-dangerous. And that seems to be the crux of the argument. And admittedly, there is some language from a 1978 Oklahoma Court of Criminal Appeals opinion, that's the Wade decision, where the court purports to limit the underlying felony to felonies that are inherently or potentially dangerous to human life, inherently dangerous as determined by the elements of the offense, or potentially dangerous in light of the facts and circumstances surrounding both the felony and the homicide. If that were the case, then it would be a much more difficult argument to make that Oklahoma's felony murder statute for second degree is broader. But there are published decisions from the Oklahoma Court of Criminal Appeals who is not known for publishing a tremendous amount of opinions. And in those opinions, and they're included in our briefing, there are three examples, at least, that show that second-degree felony murder can be committed with a non-dangerous felony. The Wade case, for example, even though the death seemed to have occurred from the bullet fired from the defendant's gun, he was convicted of felony murder and the underlying felony being possession of a loaded pistol in an alcohol establishment. That in itself, I think, is outside the scope of felony murder under the generic definition. Mulaski v. State, this is a 2004 decision. The predicate felony that served to convict the defendant of second-degree murder was furnishing alcohol to a minor. The opinion in that case talked about Wade. But the analysis, I don't want to be too critical, but I just want to simply state that it doesn't square with the generic definition of dangerous felony when in practice furnishing alcohol to a minor can serve as the predicate felony. And if the court is interested in a more cogent criticism of that case, there is a Boston University Law Review article at 91 BU Law Review 403 with the relevant discussion at 476. And there's also a number of other cases after 1978 in which felony DUI can serve as the predicate felony. Again, this is outside the scope of generic felony murder. Second, independent reason why I believe that Oklahoma's second-degree murder statute is outside the scope of— And would it be your contention—I'm not trying to put words in your mouth, but would it be your contention that it's dicta? What's your view? And I noted, I think, in your reply brief that you also referenced the fact that the or potentially dangerous in light of the facts and circumstances surrounding the felony and homicide was not included in part of the government's argument. So, two questions. What do we do with Wade? What do we make of that language in the context of this case? Second question is, what is the significance of that omitted language in your argument? Taking the second first, it allows the trial court to independently determine whether or not the underlying felony is dangerous. And there's a lot of discussion about nexus. And that Law Review article discusses, it seems to be the result that if there's a felony and there's a death, and if they're somewhat connected, that that's sufficient. And I think that the broader language of that quote shows that it takes it outside the scope of what has been understood thus far to be felony murder. Taking the first question, which is what should this court do in light of Wade and subsequent, you know, I was struggling to determine how to answer that. And I think, and I apologize for not recalling the name of the case, but in all of these modified categorical approach cases, there's this test where you have to show that this is actually a realistic thing that could happen under the statute. And I apologize for not knowing what the name of that is. This is sort of the inverse, which is Oklahoma has proclaimed in 1978 what the law is supposed to be. They've put it into their Oklahoma court uniform jury instructions. But we know in practice that it's different. We know that people in Oklahoma are convicted of second degree murder with a predicate felony that does not match categorically. And I think that what the court can simply do is what is done ordinarily in the categorical approach. You identify what is the least culpable conduct. That's the Winlow case and a host of other cases and line that up with the federal comparator. And if they're a mismatch, which we submit they are in light of these published decisions, then it is not a qualified offense. So creating a realistic possibility that, in fact, there would be prosecutions and convictions outside of the scope of what would be generic murder. Correct. OK. I think if the court, like I indicated earlier, if the court agrees on the first issue, it need not engage substantively in the second issue. Should it be reviewed for plain error? Those four. And again, this is that Oklahoma's murder statute includes unborn children. Whereas we submit the federal excuse me, the generic murder definition does not include unborn. The four prongs, I think the third and fourth prong would be pretty well established if there was a guideline error. Happy to discuss that more. But I think the more meatier issue here is one, whether it's error and two, if it's plain. I think the whether it's plain error is a more difficult argument. In light of. But the best case that I have for that is Adams and specifically footnote seven, which essentially puts within the 10th Circuit judges on notice that, quote, if a first degree murder statute were to outlaw both the killing of a fetus and an individual born alive, the guidelines might not consider the offense a crime of violence. Close quote. But Adams went on to say it was not dealing with the specific issue that you're raising here. Right. Correct. And is it dicta if it was used to address the specific argument that the government made to show the absurdity of the approach that was advocated for in Adams? Potentially. But I would say that there need not be a strict controlling decision. But again, if the court disagrees on that, I think that this issue of whether or not generic murder includes unborn fetus, unborn children, that might be left to a better day. But I still believe that on the first prong of plain error that we can establish that. It's pretty well established that the model penal code that historically state statutes and certainly federal statutory murder does not include unborn children. The government has done an able job demonstrating that there have been recent changes in some jurisdiction providing criminal liability for criminal acts against the unborn. That's true. However, I think the distinction that I'd like to make here is that 11 of those states, they create wholly separate criminal offenses. This is similar to the discussion about whether or not 1841, which is the federal Dictionary Act related to that. Right. The sort of the response to it's a wholly separate offense. And our position is that the creation of a separate offense does not in itself change the understanding of what murder is. This is not defining murder. This is defining a separate offense. And although admittedly, there are 17 states by my count that do specifically change the definition of murder. So I think that 17 states do support the government's argument. However, that's not generally a consensus. And briefly, I would also mention that Black's Law Dictionary has a separate offense for the killing of an unborn child, and that's feticide. And there is a Ninth Circuit case, the Gomez-Fernandez. That's the case that engaged on the criticism of, well not the criticism, but illustrating that 1841 was a separate offense. That case also agreed that generic murder did not include unborn children. Though I do have to admit the precise argument that the government is raising here was not raised in that Gomez-Fernandez case. For all those reasons, I think particularly on our first issue that Oklahoma's felony murder statute takes it outside the scope. Divisibility has not been an issue. I know I raised that in the opening brief. The government did not engage on that. I don't think we need to. I think it's indivisible, and it categorically fails to qualify. I'd like to reserve the rest, Your Honor. May it please the Court, Stephen Kreger on behalf of the United States. The District Court properly concluded that Oklahoma's secondary murder statute is a crime of violence under the guidelines, because it qualifies as generic murder. As Mr. Manzano's counsel pointed out, he raises two arguments. Beginning with the first argument, I think it's important to note for the Court that the argument that he has raised in oral argument, and the argument that he raised in his reply brief, is substantially different than the argument he raised both in the District Court and his opening brief. In the District Court, in his opening brief, Mr. Manzano's argument was that, essentially based on the text, Oklahoma law can cover any felony. In response, the government pointed out Wade, where the Court of Criminal Appeals judicially restricted what qualified as a predicate felony under Oklahoma law. As a result, the arguments that were raised in the opening brief are completely dispensed with under Wade. The arguments that he's made subsequently in reply in an oral argument under this Court's decision in the United States v. Loeffler are waived. And why are they waived? All the defendant is doing is responding to your argument. You said Wade, you know, limited the scope of this statute to dangerous felonies, and he's saying, no, it didn't. And here's why it didn't. And why is that not an extension of his argument that it covers all felonies? Your Honor, first of all, Wade specifically says it doesn't cover all felonies, which was the argument that he made. The reason why, and this is explained in Loeffler, is that— Hold on. You're saying Wade doesn't. He says it covers all felonies. Correct. Opening brief. You say, Wade, no, it doesn't cover all felonies, right? Right. So his argument— So five brief, he says, well, Wade, let me explain why Wade doesn't define the scope of this. So he is responding directly to your argument. Why is that Wade? Because had he argued, rather than Oklahoma law covers all felonies, that there is a distinction between the limited felonies, the Oklahoma's definition of dangerousness in Wade, and the generic definition, the government would have been able to point out things like the fact that in Vendoroff, which is a case that Mr. Manzano cited in his opening brief, the Ninth Circuit identified Oklahoma as being restricted to dangerous felonies. Well, Mr. Prager, you're in prime time now, and what I'm asking you is why isn't, to use the terms of the defendant, why aren't these real-world published cases in the replied brief, why don't they put aside the question of how Wade defines dangerousness if what we're talking about is inherently dangerous? These real-world cases that are not inherently dangerous cases, in which Oklahoma has prosecuted and convicted defendants of felony murder. So dangerous felony has never been defined by any court. The Third Circuit, moreo, simply said dangerous felony. Now, there are states that have defined it in the Model Penal Code that's defined it as certain enumerated felonies, but other states have defined it as just dangerous felony. Some states, like Oklahoma, have limited it to something akin to inherently or potentially dangerous to human life. There is no gelled definition, which another argument that would have been made had the delta between, had dangerous felony and Wade been raised in the opening brief that the government could have raised, is akin to what this court said in the United States v. Jones, that a specific portion of a generic offense can be defined by state law. And so just because Oklahoma defines dangerousness perhaps slightly differently than other states define it, doesn't mean that it's not a dangerous felony. That being said, the specific cases that Mr. Manzano has raised, starting with Wade itself, Oklahoma looked not just at the act of bringing in a firearm, or the simple possession of a firearm where alcohol was sold. It looked at the entirety of what happened during the possession of the firearm where alcohol was served. It's akin to what this court did in the United States v. Kepler in addressing the federal second-degree murder statute and addressing DUI felony murders. This court had long held that, akin to what Oklahoma had said, that any felony that isn't enumerated in 1111A could constitute federal second-degree murder. In Kepler, it explained, specifically in DUI cases, that it still would constitute, in that case, the use, attempted use, or threatened use of physical force. You said, well, we're not talking about residual offenses here. We're talking about enumerated offenses and what murder means. It's my understanding that you accepted the Marrero definition, for purposes of this case at least, of what murder is. And, Your Honor, had the delta between Wade and Marrero's citation or statement of dangerous felony been raised, we might have pushed back. That ship has sailed, friend. You accepted that definition. So I'm asking you, based upon that definition, when you have a prosecution for bringing in alcohol into a dangerous place and whatever those other real-world published cases are, would bringing alcohol into a bar, well, bringing a gun into a bar which serves alcohol, would that be prosecutable as a felony murder under generic murder in the federal system? It depends on how the generic definition of murder and the generic definition, to the extent we get there, of dangerous felony, does not have to hinge on a further application of the categorical approach. There is nothing that says dangerous felony has to be defined solely by the elements of the offense. And Oklahoma has said you can... Okay, pause, Biden. You're saying that, let me be clear, let's use the example of that one case. There were a number of other cases cited by the defendant, at least a couple others, I think, in their reply brief. Using, no, I mean in their brief, but let's use the bringing out a gun into an alcohol, into a bar. Well, as it relates to that example, are you or are you not saying that that meets the test for a dangerous felony under federal generic murder? Under the generic definition and the guidelines, I would say yes, it does. I'm talking about the generic definition that you accepted of Marrero. And I would say yes. Marrero does not say this is what a dangerous felony is. Marrero actually did not, it defined the generic definition of murder, but I'm fairly confident that murder wasn't the primary issue in Marrero. What would you draw on in explaining that bringing a gun into a bar would be a dangerous felony for purposes of generic murder under federal law? You're right, Marrero doesn't go forward to give us an explication of what dangerous means, but what are you going to draw upon and explain to me why generic federal murder would match with bringing a gun into a bar? What Oklahoma looked at when it affirmed the second degree murder statute were the facts of the case and what resulted by bringing that firearm into a place where alcohol is consumed, which lowers the inhibitions, which makes it far more likely that the firearm would be used in a dangerous way, and in fact was used in a dangerous way. And that is very interesting. To the point that the defendant made in her reply brief, you did not include that additional language in Wade that talks about other potential circumstances or that sort of thing, which presumably would leave it up to the trial court, as the defendant says, to determine what else is murder. And as it relates to that other part of Wade, which says other potentially dangerous in light of the facts and circumstances surrounding the felony, which is what you're talking about now. Does generic murder encompass that analysis? I have never seen that. Does generic federal murder allow a trial court to determine what's dangerous in a case-by-case basis? Your Honor, I would submit to the extent that we're talking about in the context of a Rule 29 decision, then yes, a court would have to determine. We're talking about what the law is. So would generic federal murder encompass a case-by-case determination of potential dangerousness? Your Honor, when you're saying generic federal murder, and I'm wanting clarification so I can answer the question, I take it to mean generic murder as laid out in the guidelines, not federal murder as defined by 18 U.S.C. Section 1111? Yeah, let's walk through it. We're talking about a crime of violence. We're talking about that in the guidelines, right? Correct. Okay. And we're talking about the enumerated offense of murder in the guidelines. Correct. I'm talking about that enumerated offense, and to the extent that we're talking about felony murder as it relates to that enumerated offense, would it be your position that that enumerated offense, the generic version of that, would encompass and allow a court on a case-by-case basis to determine potential dangerousness of the felony for felony murder purposes? Yes, Your Honor. There are states besides Oklahoma that have defined murder in that way, and so our position would be that the generic definition of murder would include both where you look at the elements of the underlying offense and also where you look at the facts of the case. Well, give me, please, a case, and one of the reasons, at least from my perspective, you're standing there is because I wanted to hear your response to the reply brief, and so tell me, please, what is your best case to tell me that federal law, I don't care what state law per se does, what does federal law say about what murder means in the guidelines for purposes of encompassing this case-by-case, fact-based determination? Do you have a case that tells me that that would be encompassed by federal murder in the guidelines? Crime or violence? Well, Your Honor, the best case that I would have off the top of my head. Well, it shouldn't be off the top of your head. You had time to think about it, and that's what we're here for. So the federal case that I would point to with regard to the federal generic definition of murder and the guidelines would be the case, and I would have to look in my brief to find the exact name of the case, talks about you determine the generic definition by looking both at federal law and at state law, and so I would point this court specifically to the cases cited in Professor Lefebvre's treatise on substantive criminal law, volume two, section 14.5B, footnote 16, which lists a number of cases, as well as Wharton's criminal law, volume two, section 21, colon 13, footnote 1. Well, let me put it to you this way. You shouldn't be doing this off the top of your head because you had time to know what it's very clear what we're here to talk about. Two, give us the supplemental authority. It's not our job to go through and find in that footnote the right case that fits the circumstances. You give us the best case that you've got that tells us the generic murder under the guidelines would encompass a case-by-case determination of dangerousness in felony murder. I look forward to reading that case when you submit it. Yes, Your Honor. Unless the court has any further questions with regard to the first issue, I'll briefly turn to the second issue. With regards to the second issue, we would submit its review to a plain error. This court could simply resolve this on the plainness prong because footnote 7 of Adams specifically provides, quote, we need not decide this issue, and so there would be no plainness. With regard even to whether or not there's error at all, we would point to starting with Section 1841 of Title 18 of the United States Code, which expands coverage of the federal murder statute, among other crimes, to protect unborn children. This is confirmed by the House report. It's also confirmed by what this court said in Doe v. Hunter, saying that Section 1841 and the laws defining the unborn as victims of homicide under Oklahoma law did the same thing. Fifteen states have expressly included children, including two of the largest states, as victims of homicide. That would include Alabama, Arizona, Arkansas, California, Idaho, Kansas, Maryland, Massachusetts, Mississippi, Missouri, Ohio, Oklahoma, Tennessee, Texas, and Utah. Ten more states have feudal homicide statutes. Two additional states have laws similar to Section 1841 in the federal statutes. And ultimately, we're addressing what is the modern generic definition of murder. And the modern generic definition of murder has started to encompass, and the majority of states have included, the protection of unborn children or fetuses as victims of homicide. I have a question. Of course. I've been listening to the arguments, and I come down to this question and your response to Chief Judge Holm. What do we do then with the three cases out of Oklahoma in regards to taking a gun into a bar or furnishing alcohol or drugs where there's that kind of death? What do we do then with those three cases that have been cited to us? Do we just ignore them, or how do you handle that? Well, Your Honor, so the first thing I would point out, and I understand the court at least is pushing back on this. This wasn't addressed. There was no analysis of these cases, especially in the context of the generic. We don't need an analysis because I can read it for myself as to what the Oklahoma court's doing. Well, Your Honor, the second thing that I would point to would be what this court did with the federal second-degree murder statute in Kepler. And in Kepler it explained that, and this might be a response perhaps to Judge Holm's question as well, that the type of felony that was envisioned in the fourth part of the federal second-degree murder statute required, I believe it was a depraved heart under federal law. And so what this court could do is say Oklahoma has said in these specific situations, one, it hasn't addressed the outer limits of dangerousness. And because it hasn't addressed the specific question, it's not terribly relevant. And that's what this court did in Kepler when it was addressing its own precedent regarding DUI cases. And that was one type of case that Mr. Manzano cited in his opening brief in terms of the fourth prong, and then again in his reply brief. Thank you, counsel. I appreciate that. Thank you very much, Your Honors. Unless the court has questions, I have nothing further. Nothing further. Thank you. The case is submitted. Thank you.